UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION,<br><br>Plaintiffs,<br><br>-against-<br><br>SHOWTIME ON THE PIERS, LLC and CHARLES NEWMAN, individually,<br><br>Defendants. | 19 CV _____<br><br>**COMPLAINT** |

Plaintiffs, by their attorneys, Virginia & Ambinder, LLP, allege as follows:

## NATURE OF THE ACTION

1. This lawsuit is a civil action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, by multiemployer employee-benefit funds, through their respective Boards of Trustees, to collect delinquent employer contributions to employee benefit plans.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to Sections 502(e)(1), 502(f), and 515 of ERISA, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, and Section 1331 of Title 28 of the United States Code, 28 U.S.C. § 1331.

1

3. Venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), Section 301 of the LMRA, 29 U.S.C. § 185, and Section 1391(b) of Title 28 of the United States Code, 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, and Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The ERISA Funds are organized and operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3). The Trustees are fiduciaries of the ERISA Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5. Plaintiffs Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6. Plaintiff New York City and Vicinity Carpenters Labor-Management Corporation (together, with the Charity Fund and the ERISA Funds, as the "Funds") is a New York not-for-profit corporation organized and operated in accordance with Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

7.      Defendant Showtime On The Piers LLC ("Showtime") is organized under the laws of the State of New York. At relevant times, Defendant Showtime was, and is, an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142. Defendant Showtime maintains its principal place of business at 711 12th Avenue, Pier 92, New York, NY, 10019.

8.      Defendant Charles Newman is the president, operator, and owner of Defendant Showtime. Charles Newman's principal place of business is located at 711 12th Avenue, Pier 92, New York, NY, 10019.

## **FACTS**

9.      Defendant Showtime is a trade show and exhibit services company that constructs and/or erects trade show booths and similar structures for events on the piers of Manhattan, (mostly at Pier 92).

10.     Showtime is owned and operated by Charles Newman, who is also the president of Showtime.

11.     As the sole owner and president of Showtime, Charles Newman has responsibility and discretion over Showtime's assets and decides which of Showtime's creditors are paid and in what order they are paid.

12.     Before owning and operating Showtime, Charles Newman was a principal at Port Parties Ltd. ("Port Parties"). He co-owned Port Parties with his father.

13.     As principal and part-owner of Port Parties, Charles Newman had responsibility and discretion over Port Parties' assets and decided which of Port Parties' creditors would be paid and in what order they would be paid.

14. While Newman was a principal and part-owner at Port Parties, Port Parties performed the same trade show and exhibit work at the same location where Showtime currently performs such work.

15. On March 16, 2010, Charles Newman, on behalf of Port Parties, signed a collective bargaining agreement (the "2010 Port Parties CBA") with the New York District Council of Carpenters f/k/a the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union").

16. The 2010 Port Parties CBA contained the same terms and conditions as those in The Convention And Exhibition Field Agreement Between The New York Trade Show Contractors Association And The Union For The Exhibit Shows In Effect From July 1, 2001 Through June 30, 2006 (the "2001-06 Trade Show Association CBA").

17. The 2010 Port Parties CBA and the 2001-06 Trade Show Association CBA identify the Funds as third-party beneficiaries entitled to benefit contributions for every hour of work that is covered by either agreement, and they identify the Funds as third-party beneficiaries entitled to conduct audits of employers to ensure compliance with their benefit contribution obligation.

18. On or around May 27, 2010, Charles Newman signed, on behalf of Port Parties, an Interim Compliance Agreement (the "2010 Port Parties ICA") with the Union, which extended the 2010 Port Parties CBA until the New York Trade Show Contractors Association (the "Trade Show Association") and the Union finalized a successor contract to the 2001-06 Trade Show Association CBA, at which point Port Parties, under the terms of the 2010 Port Parties ICA, would be bound by the successor agreement between the Trade Show Association and the Union.

19. On February 7, 2014, the Trade Show Association and the Union finalized a successor agreement to the 2001-06 Trade Show Association CBA that covered July 1, 2011 through June 30, 2017 (the "2011-17 Trade Show Association CBA").

20. The 2011-17 Trade Show Association CBA identifies the Funds as third-party beneficiaries entitled to benefit contributions for every hour of work covered by that agreement, and entitled to conduct audits of employers to ensure compliance with their benefit contribution obligations.

21. By operation of the 2010 Port Parties ICA, on February 7, 2014, (the day that the 2011-17 Trade Show Association CBA was finalized), Port Parties became bound by the terms and conditions of the 2011-17 Trade Show Association CBA.

22. In or around December 2014, Charles Newman started operating Port Parties' trade show business under a different company (Showtime) without informing the Union or the Funds.

23. Port Parties and Showtime have shared ownership, employ the same employees and officers, use the same equipment, serve the same customers in the same locations, and operate out of the same office, using the same address.

24. Port Parties ceased operating on or around December 30, 2014.

25. Charles Newman is now the sole owner and president of Showtime.

26. As owner and president of Showtime, Charles Newman, with help from his officer Anthony Marino, who also worked for Port Parties, continued, and continues, to hire members of the Union to perform trade show work covered by the 2011-17 Trade Show Association CBA for Showtime, just as he and Marino did for Port Parties.

27. These members of the Union hired by Showtime are also participants of the Funds.

28. Beginning in January 2015 neither Port Parties nor Showtime remitted benefit contributions to the Funds on behalf of the carpenters that Showtime hired from the Union.

29. On February 9, 2015, the Funds received a benefit shortage complaint from a participant of the Funds, stating that his employer, Showtime, was not remitting benefit contributions to the Funds on his behalf.

30. The Funds received complaints from several other participants of the Funds, who were also members of the Union, stating that Showtime was not remitting benefit contributions on their behalf to the Funds.

31. On September 16, 2015, representatives of the Funds and the Union met with Showtime to discuss Showtime's relationship with the Union and the Funds, and to discuss Showtime's delinquent contributions owed to the Funds.

32. During this meeting, Showtime, represented by Charles Newman, agreed to remit benefit contributions to the Funds in accordance with the terms and conditions of the 2011-2017 Trade Show Association CBA, retroactive to January 1, 2015, the approximate date when Showtime took over Port Parties' trade show work.

33. Newman, on behalf of Showtime, also agreed, at this September 16, 2015 meeting, to permit the Funds' auditor to inspect its records for the purpose of determining the precise amount of contributions that Showtime owed to the Funds for work dating back to January 1, 2015.

34. To memorialize this agreement, on approximately September 25, 2015, Charles Newman, on behalf of Showtime, signed an Interim Compliance Agreement (the "2015 Showtime ICA").

35. The 2015 Showtime ICA had and has the effect of binding Showtime to the terms and conditions of the 2011-17 Trade Show Association CBA and its successor agreement,

whenever such an agreement is finalized, based on the type of work that Showtime performs, *to wit*, trade show work.

36. The terms and conditions of the 2011-17 Trade Show Association CBA require that "[e]ach employer [subject to the terms and conditions of the 2011-17 Trade Show Association CBA] shall be bound by all terms and conditions of the Agreements and Declarations of Trust" of the ERISA Funds (collectively, the "Trust Agreements").

37. The Trust Agreements state that "[t]he assets of the [ERISA Funds] consist of: (a) the sums of money that have been or will be paid or which are due and owing to the [ERISA Funds] by the Employers as required by the applicable collective bargaining agreement, participation agreement, or memorandum of agreement [*i.e.*, the 2015 Showtime ICA and the 2011-17 Trade Show Association Agreement] . . . (c) all other contributions and payments to or due and owing to the Fund from any source to the extent permitted by law" (the "Trust Assets").

38. On October 5, 2015, Showtime began remitting benefit contributions to the Funds, in accordance with the terms and conditions of the 2011-17 Trade Show Association CBA through the Funds' electronic payment system, ("I-Remit").

39. Showtime also, pursuant to the terms and conditions of the 2011-17 Trade Show Association CBA, submitted to an audit of its books and records by the Funds' auditor (the "Audit") covering January 1, 2015 through July 26, 2015 (the "Audit Period") to determine the amount of contributions Showtime owed to the Funds.

40. The Audit revealed that Showtime failed to remit contributions to the Funds during the Audit Period totaling $597,500.88.

41. To date, the delinquent contributions identified in the Audit remain outstanding.

42.     In addition to the amounts owed for work during the Audit Period, employees of Showtime, (who are also members of the Union and participants of the Funds), submitted benefit shortage complaints to the Funds relating to work performed after the Audit Period indicating that Showtime owes additional post-audit contributions exceeding $250,000.

43.     Showtime has refused to permit an audit covering July 27, 2015 to the present.

44.     Pursuant Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §1132(g)(2) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185, Showtime is liable to the Funds for: (1) delinquent contributions of $597,500.88 for the period January 1, 2015 through July 26, 2015, delinquent contributions in an amount to be determined through an audit of Showtime's books and records for the period of July 27, 2015 through the present, and any other delinquent contributions otherwise identified during the course of this litigation; (2) interest thereon at the prime lending rate of Citibank plus 200 basis points (3) an amount equal to the greater of either (i) interest on the unpaid contributions, or (ii) liquidated damages of twenty percent (20%) of the principal amount of the delinquency; and (4) all reasonable attorneys' fees, expenses and costs of the action.

45.     Because Charles Newman had control and discretion over Showtime's assets at all times, and chose to misappropriate Trust Assets of the ERISA Funds by paying other creditors before paying the delinquent contributions owed to the ERISA Funds, Newman is personally liable for Showtime's delinquent contributions owed to the ERISA Funds, and for all accompanying statutory and contractual relief, for the period January 1, 2015 through the present.

## FIRST CLAIM FOR RELIEF AGAINST SHOWTIME
*Unpaid Contributions Under 29 U.S.C. § 1145*

46.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47. Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."

48. Showtime agreed to remit benefit contributions to the Funds in accordance with the terms and conditions of the 2011-17 Trade Show Association CBA.

49. Showtime submitted benefit contributions to the Funds in accordance with the terms and conditions of the 2011-17 Trade Show Association CBA.

50. Showtime did not remit all benefit contributions owed to the Funds in accordance with the terms and conditions of the 2011-17 Trade Show Association CBA.

51. An audit of Showtime revealed that Showtime owed the Funds delinquent contributions in the amount of $597,500.88 for work performed during the period January 1, 2015 through July 26, 2015.

52. The Funds, pursuant to their agreement with Showtime, are entitled to conduct an audit of Showtime to determine the extent of Showtime's delinquent benefit contributions from July 27, 2015 through the present.

53. Pursuant Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §1132(g)(2) and 1145, Showtime is liable to the Funds for: (1) delinquent contributions of $597,500.88 for the period of January 1, 2015 through July 26, 2015, delinquent contributions in an amount to be determined through an audit of Showtime's books and records for the period of July 27, 2015 through the present, and any other delinquent contributions otherwise identified during the course of this litigation; (2) interest thereon at the prime lending rate of Citibank plus 200 basis points (3) an amount equal to the greater of either (i) interest on the unpaid contributions, or (ii) liquidated

damages of twenty percent (20%) of the principal amount of the delinquency; and (4) all reasonable attorneys' fees, expenses and costs of the action.

## SECOND CLAIM FOR RELIEF AGAINST SHOWTIME
*Violation of Labor Agreement Under 29 U.S.C. § 185*

54. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55. Showtime entered into a labor agreement to remit benefit contributions to the Funds in accordance with the terms and conditions of the 2011-17 Trade Show Association CBA.

56. Showtime breached that agreement by failing to remit contributions to the Funds as required in accordance with the terms and conditions of the 2011-2017 Trade Show Association CBA.

57. An audit of Showtime revealed that Showtime owed the Funds delinquent contributions in the amount of $597,500.88 for the period January 1, 2015 through July 26, 2015.

58. The Funds are entitled to conduct an audit of Showtime to determine the extent of Showtime's delinquent benefit contributions for the period July 27, 2015 through the present pursuant to Article XVI, Section 2 of the 2011-17 Trade Show Association CBA, to which Showtime agreed to be bound at the September 16, 2015 meeting with the Union and the Funds, as memorialized in the 2015 Showtime ICA and exhibited by Showtime's conduct.

59. Pursuant to Showtime's agreement to remit contributions to the Funds in accord with the terms and conditions of the 2011-17 Trade Show Association CBA and Section 301 of the LMRA, 29 U.S.C. § 185, Showtime is liable for: (1) delinquent contributions of $597,500.88 for the period of January 1, 2015 through July 26, 2015, delinquent contributions in an amount to be determined through an audit of Showtime's books and records for the period of July 27, 2015 through the present, and any other delinquent contributions otherwise identified during the course

of this litigation; (2) interest thereon at the prime lending rate of Citibank plus 200 basis points (3) an amount equal to the greater of either (i) interest on the unpaid contributions, or (ii) liquidated damages of twenty percent (20%) of the principal amount of the delinquency; and (4) all reasonable attorneys' fees, expenses and costs of the action.

### THIRD CLAIM FOR RELIEF AGAINST CHARLES NEWMAN
*Breach of Fiduciary Duty*

60. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. Under the ERISA Funds' Trust Agreements, the ERISA Funds' Trust Assets include delinquent contributions that Showtime owes to the ERISA Funds under Newman's September 2015 agreement with the Funds, which he memorialized by signing the 2015 Showtime ICA, to remit benefit contributions to the Funds in accordance with the terms and conditions of the 2011-17 Trade Show Association CBA.

62. Newman is a fiduciary of the ERISA Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

63. Newman is a party in interest with respect to the ERISA Funds under of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

64. Newman is and was responsible for Showtime's failure to remit required contributions to the ERISA Funds.

65. Newman breached his fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104, by, *inter alia*, failing to discharge his duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and/or with the care, skill, prudence, and diligence required under the circumstances.

66. Newman breached his fiduciary duties under Section 406, 29 U.S.C. § 1106, of ERISA by, among other things, causing assets of the ERISA Funds to be used by or for the benefit of a party in interest.

67. Accordingly, pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Newman is personally liable to the ERISA Funds for: (1) all losses incurred by the ERISA Funds as a result of Newman's breach of fiduciary duties, as revealed by the audits or as otherwise found to be due during the course of this litigation; (2) all profits Newman has made and/or all earnings the ERISA Funds have lost as a result of Newman's unlawful acts and omissions, in an amount to be determined at trial; and (3) attorneys' fees and costs incurred in this action.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

(1) On Plaintiffs' First and Second Claim for Relief, issue an Order requiring Showtime to: (a) submit to an audit to determine Showtime's delinquent contributions owed to the Funds from July 27, 2015 through the present; (b) pay all delinquent benefit contributions owed to the Funds by Showtime for the period of January 1, 2015 through the present, including delinquent contributions of $597,500.88 identified in the audit of Showtime for the period of January 1, 2015 through July 26, 2015, delinquent contributions in an amount to be determined through an audit of Showtime's books and records for the period of July 27, 2015 through the present, and any other delinquent contributions otherwise identified during the course of this litigation; (c) interest thereon at the prime lending rate of Citibank plus 200 basis points; (d) an amount equal to the greater of either (i) interest on the unpaid contributions, or (ii) liquidated damages of twenty percent (20%) of the principal

amount of the delinquency owed by Showtime from January 1, 2015 through the present; and (e) all reasonable attorneys' fees, expenses and costs of the action;

(2) On Plaintiffs' Third Claim for Relief, issue an Order finding that Charles Newman breached his fiduciary duty to the Funds and finding that he is liable to the Funds for: (a) all losses incurred by the Funds as a result of Newman's breach of fiduciary duties, as revealed by the audits of Showtime or as otherwise found to be due during the course of this litigation; (b) all profits Newman has made and/or all earnings the Funds have lost as a result of Newman's unlawful acts and omissions, in an amount to be determined at trial; and (c) attorneys' fees and costs incurred in this action; and

(3) Award Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
August 19, 2019

**VIRGINIA & AMBINDER LLP**

By: ___/s/_____  
Charles R. Virginia, III, Esq.  
John M. Harras, Esq.  
40 Broad Street, 7th Floor  
New York, New York 10004  
(t) (212) 943-9080  
jharras@vandallp.com