UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TRUSTEES OF THE NEW YORK CITY DISTRICT          Case No.: 19-cv-07755 (VEC)
COUNCIL OF CARPENTERS PENSION FUND,
WELFARE FUND, ANNUITY FUND, and
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND,
TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY FUND, and
THE NEW YORK CITY AND VICINITY
CARPENTERS LABOR-MANAGEMENT
CORPORATION,

                                        Plaintiffs,

                    -against-

SHOWTIME ON THE PIERS, LLC and CHARLES
NEWMAN, individually,

                                        Defendants.
------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
(Oral Argument Requested)**


Forchelli Deegan Terrana LLP
*Attorneys for Defendants*
The Omni
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553
(516) 248-1700

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF THE FACTS ..................................................................................... 4

ARGUMENT .................................................................................................................. 4

LEGAL STANDARD ..................................................................................................... 4

POINT I

PLAINTIFFS BREACH OF FIDUCIARY CLAIM AGAINST DEFENDANT
CHARLES NEWMAN SHOULD BE DISMISSED BECAUSE IT IS TIME-BARRED .. 6

POINT II

PLAINTIFFS FAIL TO STATE A CLAIM UNDER EITHER ERISA OR THE LMRA
TO SEEK UNPAID CONTRIBUTIONS. ............................................................ 11

    A.   Plaintiffs fail to demonstrate an enforceable agreement obligating Showtime to remit
    the contributions at issue in this action. .............................................................. 12

    B.   The Parole Evidence Rule Prohibits Plaintiffs from Relying on a Verbal Agreement that
    is Outside the Four Corners of the Parties' Written Agreement. ......................... 16

POINT III

ALL CLAIMS ASSERTED BY PLAINTIFF CHARITY FUND AND PLAINTIFF
LABOR-MANAGEMENT CORPORATION SHOULD BE DISMISSED FOR LACK
OF STANDING ...................................................................................................... 18

    A.   Plaintiffs Charity Fund and Labor-Management Corporation Lack Standing to Assert a
    Section 301 Claim Under LMRA. ........................................................................ 18

    B.   Plaintiffs Charity Fund and Labor-Management Corporation Also Lack Standing to
    Assert Claims Under ERISA. ............................................................................... 20

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Acito v. Imcera Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ............................................................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 4, 11

*Brass v. American Film Technologies, Inc.*,
   987 F.2d 142 (2d Cir. 1993) ....................................................................................... 5

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir.2001) ........................................................................................ 7

*Central States Southeast and Southwest Areas Health and Welfare Fund v. MerckMedco Managed Care, LLC*,
   433 F.3d 181 (2d Cir.2005) ....................................................................................... 18

*Cummings v. City of New York*,
   302 F. Supp. 3d 511 (S.D.N.Y. 2017) ...................................................................... 12

*Demopoulos v. Anchor Tank Lines, LLC*,
   117 F. Supp. 3d 499 (S.D.N.Y. 2015). ................................................................... 7, 10

*E. States Health & Welfare Fund v. Philip Morris, Inc.*,
   11 F. Supp. 2d 384 (S.D.N.Y. 1998) ........................................................................ 23

*Evercrete v. H-Cap Ltd*,
   429 F. Supp. 2d 612 (S.D.N.Y. 2006) ....................................................................... 14

*Ferrera v. Quadrozzi Equipment Leasing Corp.*,
   2013 WL 3226755 (E.D.N.Y. June 25, 2013) .......................................................... 19

*Fishbein v. Miranda*,
   670 F.Supp.2d 264 (S.D.N.Y.2009) ........................................................................... 5

*Ghartey v. St. John's Queens Hosp.*,
   869 F.2d 160 (2d Cir. 1989) ....................................................................................... 6

*Hayes v. Coughlin*,
   1991 WL 220963 (S.D.N.Y. Oct. 16, 1991) ............................................................... 5

*Holloway v. King*,
  361 F. Supp. 2d 351 (S.D.N.Y.), *aff'd.* 161 F. App'x 122 (2d Cir. 2005) ................................ 17

*Janese v. Fay*,
  692 F.3d 221 (2d Cir.2012) .......................................................................................... 7

*Jones v. SCO Family of Servs.*,
  202 F. Supp. 3d 345 (S.D.N.Y. 2016) ........................................................................... 5

*Lewis v. Benedict Coal Corporation*,
  361 U.S. 459 (1960) .................................................................................................... 19

*Litwin v. Blackstone Group, L.P.*,
  634 F.3d 706 (2d Cir. 2011) .......................................................................................... 4

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006) .......................................................................................... 5

*Metal Lathers Local 46 Pension Fund v. River Ave. Contr. Corp.*,
  954 F. Supp. 2d 250 (S.D.N.Y. 2013) ......................................................................... 23

*Moglia v. Geoghegan*,
  403 F.2d 110 (2d Cir. 1968) ....................................................................................... 11

*O'Hare v. General Marine Transport Corp.*,
  740 F.2d 160 (2d Cir.1984) ........................................................................................ 19

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996) ....................................................................................... 13

*Predun v. Shoreham-Wading River School Dist.*,
  489 F.Supp.2d 223 (E.D.N.Y. 2007) ............................................................................ 6

*Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*,
  700 F.2d 889 (2d Cir. 1983) ....................................................................................... 23

*Ritchie v. Landau*,
  475 F.2d 151 (2d Cir. 1973) ....................................................................................... 14

*Robinson v. Concentra Health Servs., Inc.*,
  781 F.3d 42 (2d Cir. 2015) ......................................................................................... 14

*Ross v. Bank of America, N.A. (USA)*,
  524 F.3d 217 (2d Cir. 2008) ....................................................................................... 18

*Schneider Moving & Storage Co. v. Robbins*,
  466 U.S. 364 (1984) .................................................................................................... 19

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ........................................................................................ 4

*Staehr v. Hartford Fin. Servs. Grp.*,
   547 F.3d 406 (2d Cir. 2008) ........................................................................................ 5

*Stewart v. Riviana Foods Inc.*,
   2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ........................................................... 5

*Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield Cty. Sprinkler Co., Inc.*,
   243 F.3d 112 (2d Cir. 2001) ...................................................................................... 12

*Trustees of the New York City District Council of Carpenters Pension Fund, et al. v. Tappan Zee Constructors, LLC*,
   2015 WL 8159377 (S.D.N.Y. November 30, 2015) ................................................... 5

*Trustees. of the Health and Welfare and the Pension Funds of the Four Joint Boards v. Schlesinger Bros., Inc.*,
   931 F. Supp. 204 (S.D.N.Y. 1996) ........................................................................... 19

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................... 18

*Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*,
   111 F. Supp. 2d 450 (S.D.N.Y. 2000) ...................................................................... 17

**Statutes**

26 U.S.C. § 501(c)(3) ........................................................................................................ 19

29 U.S.C. § 1002(1) .......................................................................................................... 20

29 U.S.C. § 1002(1)-(3) .................................................................................................... 22

29 U.S.C. § 1002(21)(A) .................................................................................................. 20

29 U.S.C. § 1002(3) .......................................................................................................... 20

29 U.S.C. § 1132(a)(3) ...................................................................................................... 19

29 U.S.C. § 1132(a)(7) ...................................................................................................... 19

29 U.S.C. § 185 ................................................................................................................. 17

29 U.S.C. § 185(a)-(b) ...................................................................................................... 17

29 U.S.C. § 186(c)(9) ........................................................................................................ 19

29 U.S.C. §§ 1132(a)(3)...................................................................................... 17

29 U.S.C. §186(c)(5)(A) ..................................................................................... 10

29 U.S.C.A. § 1002(2)(A)-(B)............................................................................. 21

**Rules**

Fed. R. Civ. 12(b)(1).......................................................................................... 17

Fed. R. Civ. P. 12(b)(6)................................................................................. passim

Fed. R. Evid. 201(b).............................................................................................. 4

Fed. R. Evid. 201(d).............................................................................................. 4

## PRELIMINARY STATEMENT

Defendants, Showtime on the Piers LLC ("Showtime") and Charles Newman ("Newman") (collectively, "Defendants"), submit this memorandum of law in support of their motion under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint filed by plaintiffs Trustees Of The New York City District Council Of Carpenters Pension Fund, Welfare Fund, Annuity Fund, And Apprenticeship, Journeyman Retraining, Educational And Industry Fund ("Pension Fund"), Trustees Of The New York City Carpenters Relief And Charity Fund ("Charity Fund"), and The New York City and Vicinity Carpenters Labor-Management Corporation ("Labor-Management Corp.") (the Pension Fund, Charity Fund and Labor Management Corp are collectively referred to as the "Plaintiffs" or "Funds"), which seeks recovery of alleged unpaid contributions pursuant to Section 502(g) and 515 of the Employee Retirement Income Security Act ("ERISA") and/or Section 301 of the Labor Management Relations Act (the "LMRA").   This action should be dismissed because: (a) Plaintiffs' claims against Newman for breach of his alleged fiduciary duty under ERISA are untimely and outside the applicable statute of limitations; (b) Plaintiffs' claims against Showtime under ERISA and the LMRA fail to state a cause of action due to Plaintiffs' inability to demonstrate the existence of an agreement that obligates Showtime to remit contributions to the Funds as a matter of law; and (c) the Charity Fund and Labor-Management Corp. lack standing to assert claims under  ERISA and the LMRA.

Judicial notice should be taken that this litigation is Plaintiffs' *third* bite at the apple to recover the unpaid contributions that are allegedly due by Showtime for the period from January 1, 2015 through July 16, 2015.  Plaintiffs previously sought to recover these alleged unpaid contributions first in an arbitration against Showtime before arbitrator Roger Maher.  Plaintiffs then sought to confirm and enforce the March 24, 2016 arbitration award issued by arbitrator

Maher by commencing an action against Showtime in this District Court on June 22, 2016 in an action styled, *Trustees of the New York City District Council of Carpenters Pension Fund, et al. v. Showtime on the Piers*, 16-civ-04788 ("*Showtime I*").[1]  Plaintiffs commenced *Showtime I* (and the instant lawsuit) pursuant to Section 502(a)(3) of ERISA and Section 301 of the LMRA (*See* Brennan Declaration, Exhibit A at ¶ 1).  In *Showtime I,* the Honorable Ronnie Abrams of this Court denied both Plaintiffs' motion for summary judgment and motion for reconsideration, finding that the Interim Compliance Agreement ("ICA") executed by Showtime in September 2015 (which is incorporated by reference in the complaint in the instant lawsuit), was ambiguous on its face and failed to demonstrate Showtime's agreement to provide contributions to the Funds and/or to arbitrate disputes relating to such contributions.  After three (3) years of litigating *Showtime I* and on the precipice of trial, Plaintiffs voluntarily vacated the arbitration award and discontinued *Showtime I* without appealing either of Judge Abrams' decisions.

Now, in a third attempt to seek recovery of the same alleged unpaid contributions as were sought in the arbitration before arbitrator Maher and in *Showtime I*, Plaintiffs commenced this lawsuit.  Notwithstanding Plaintiffs' attempts to artfully replead and repackage their claims, however, this lawsuit is nothing more than a reboot and continuation of Plaintiffs' failed and unsuccessful litigation in *Showtime I.*  Equally significant, the claims asserted herein fail as a matter of law and Plaintiffs' complaint should be dismissed in its entirety against all Defendants.

Particularly, Plaintiffs' claims against Newman are untimely.  This District Court held in *Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 507–08 (S.D.N.Y. 2015), that actions such as this, where the alleged breach of duty is premised on an individual defendant's actions causing an employer not to remit benefit fund contributions, the applicable statute of

---

[1] A copy of the Petition filed in *Showtime I*, is attached as Exhibit A to the Declaration of Frank W. Brennan ("Brennan Declaration").

limitations is three years after the earliest date on which plaintiff had actual knowledge of the breach.  Plaintiffs, having been aware of the alleged unpaid contributions as early as 2015, are now well outside of this three-year limitation period.  Further, any claim for the alleged additional $250,000 in contributions, which allegedly accrued after July 16, 2015, are insufficiently described in the Complaint, and fail to state a claim.

As for Plaintiffs' claims against Showtime under ERISA and/or LMRA, the facts alleged in the Complaint fail to demonstrate any agreement obligating Showtime to pay these contributions.  Notably, the only agreement identified in the Complaint – the ICA – is silent about payment of contributions to the Funds. Further, contrary to Plaintiffs' assertions, the ICA does not bind Defendant Showtime to the purported July 1, 2011 through June 30, 2017 Trade Show Association collective bargaining agreement identified in Plaintiffs' complaint (hereinafter "2011-17 Trade Show CBA").  Notably, the ICA is silent and does not reference the 2011-17 Trade Show CBA.  Additionally, Plaintiffs having already conceded, and the District Court in *Showtime I,* having already determined that Showtime and the New York City District Council of Carpenters ("Union") had no agreement prior to September 2015, Plaintiffs are now judicially estopped from asserting that there was any pre-existing agreement between the parties or that such pre-existing agreement was the 2011-17 Trade Show CBA.

Additionally, the Charity Fund and Labor-Management Corp. fail to allege facts in the Complaint to establish their standing under ERISA and the LMRA to raise a claim against Defendants.

Accordingly, Plaintiffs complaint fails to state a cause of action and should be dismissed by this Court pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STATEMENT OF THE FACTS

Defendants respectfully refer to the facts alleged in the Complaint, together with the prior filings and determinations rendered by the District Court in *Showtime I,* which this Court may take judicial notice of under Fed. R. Evid. 201.

## ARGUMENT

## LEGAL STANDARD

Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate where it appears that a plaintiff can prove no set of facts upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995); *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir. 1994); *Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 474–75 (S.D.N.Y. 2004).  "To survive a motion to dismiss, a complaint must plead enough facts to state a claim for relief that is plausible on its face."  *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The factual allegations pleaded "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

"A district court must first review the plaintiff's complaint to identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Iqbal*, 556 U.S. at 679.  The court then considers whether plaintiff's remaining well-pleased allegations,

assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 348 (S.D.N.Y. 2016) . "In deciding the 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor." *Trustees of the New York City District Council of Carpenters Pension Fund, et al. v. Tappan Zee Constructors, LLC*, 2015 WL 8159377, at *2 (S.D.N.Y. November 30, 2015).

In addition to the factual allegations in a complaint, the court may consider the contents of any documents attached to the complaint or incorporated therein by reference, matters as to which judicial notice may be taken such as public records, and documents either in the plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see also Stewart v. Riviana Foods Inc.*, 2017 WL 4045952, at *1 (S.D.N.Y. Sept. 11, 2017); *Fishbein v. Miranda,* 670 F.Supp.2d 264, 271 (S.D.N.Y.2009); *Hayes v. Coughlin,* 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint.")   Indeed, "the Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned ... at any stage in the proceeding." Fed. R. Evid. 201(b) and 201(d).  On a motion to dismiss, courts may also take judicial notice of docket sheets and filings in other cases.  *See Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 425 (2d Cir. 2008); *see also Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006).

## POINT I

**PLAINTIFFS BREACH OF FIDUCIARY CLAIM AGAINST DEFENDANT CHARLES NEWMAN SHOULD BE DISMISSED BECAUSE IT IS TIME-BARRED**

A motion to dismiss based upon timeliness is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989); *Predun v. Shoreham-Wading River School Dist.*, 489 F.Supp.2d 223, 227 (E.D.N.Y. 2007).  In this lawsuit, Plaintiffs seek to recover unpaid benefit fund contributions that are purportedly due from Showtime for the period from January 1, 2015 through July 26, 2016.  *See* Complaint, ECF Doc. No. 1 at ¶¶ 44, 51, 57, 59, 67.  In so doing, Plaintiffs' third cause of action alleges that Newman is personally liable for Showtime's alleged delinquent contributions and for all accompanying statutory and contractual relief, for the period January 1, 2015 through present, under the theory that the delinquent contributions allegedly owed by Showtime were trust assets under ERISA and Newman breached his alleged fiduciary obligations under ERISA by failing to ensure Showtime's remittance of the required contributions. *See* Complaint, ECF Doc. No. 1 at ¶¶ 45, 60-67.  According to Plaintiffs, Newman, who is alleged to be the sole owner and president of Showtime, possessed control and discretion over Showtime's assets at all times and chose to misappropriate the trust assets by paying other creditors before paying the delinquent contributions allegedly owed to one or more of the Plaintiffs. *See* Compliant, ECF Doc. No. 1 at ¶¶ 25, 45, 60-67.  However, Plaintiffs' claim for breach of fiduciary duty against Newman must be dismissed because the conduct complained of falls outside the applicable statute of limitations period and, as such, Plaintiffs fail to state a claim upon which relief can be granted.

As this District Court discussed in *Demopoulos v. Anchor Tank Lines, LLC*:

> The statute of limitations that applies to actions for breach of
> fiduciary duty under ERISA states:

6

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after

> (A) the date of the last action which constituted a part of the breach or violation, or
> (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. The statute "provides three alternative limitations periods, depending on the underlying factual circumstances." *Janese v. Fay*, 692 F.3d 221, 227–28 (2d Cir.2012). Whichever date is earliest is the applicable bar date. The first date "is six years from the date of the last action that was part of the breach." *Id.* at 228. The second date is "three years, applicable and beginning when a putative plaintiff has 'actual knowledge' of the violation, defined as 'knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act.'" *Id.* (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir.2001)). The third date—six years from plaintiffs' discovery of the breach—applies only where "a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Caputo,* 267 F.3d at 190.

*Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 507–08 (S.D.N.Y. 2015).

Where, as here, Plaintiffs' breach of fiduciary claim is based on the allegation that the offending fiduciary causes the employer not to make the required benefit contributions to the funds, this District Court held that the applicable statute of limitations to be applied to such breach of fiduciary claim is three years from Plaintiffs' actual knowledge of the breach or violation.  See

*Id.* at 508 (3-year statute of limitations controls with respect to trustees' breach of fiduciary duty claim against individual defendants who caused corporate entities not to make required contributions to multiemployer benefit plans governed by ERISA because it is the earliest of the three alternatives and the third alternative – alleged fraud or concealment – does not apply).  Based on the pleadings in this action and the court filings in *Showtime I*, which the Court should take judicial notice of, it cannot be genuinely disputed that Plaintiffs had actual knowledge of Defendants' alleged breach no later than 2015.   In this regard, Plaintiffs acknowledge in the Complaint in this action that: (1) beginning in January 2015, Showtime allegedly failed to remit contributions to the Funds on behalf of carpenters that Showtime hired from the New York City District Council of Carpenters (hereinafter "Union"); (b) on February 9, 2015, Plaintiffs allegedly received a complaint from a participant of the Funds who claimed that Showtime was not remitting benefit contributions to the Funds on his behalf; (c) they allegedly received complaints from several other participants of the Funds, who were also members of the Union, stating that Showtime was not remitting benefit contributions on their behalf to the Funds – while tellingly omitting the dates on which such alleged complaints were received by the Funds; (d) on September 16, 2015, representatives of Plaintiffs and the Union met with Newman to discuss the alleged unpaid contributions allegedly owed by Showtime to the Funds; and (e) Plaintiffs further allege that Showtime submitted to an audit of its books and records by the Funds' auditors (the "Audit") covering the period from January 1, 2015 through July 26, 2015 (the "Audit Period") to determine the  amount of contributions allegedly owed by Showtime to Plaintiffs and that said audit revealed that Showtime purportedly failed to remit contributions to the Plaintiffs during the Audit Period totaling $597,500.88 and that such contributions remain outstanding – while tellingly omitting the

irrefutable fact that the Plaintiffs' Audit was completed on November 3, 2015.[2]  *See* Complaint, ECF Doc. No. 1 at ¶¶ 28-32 39-41.

Further, in *Showtime I*, relying upon the November 3, 2015 Audit, Plaintiffs attempted to enforce a March 24, 2016 arbitration award against Showtime to recover the same unpaid contributions from the Audit Period that are at issue in this lawsuit.  In support of its motion for summary judgment to enforce the March 24, 2016 arbitration award in *Showtime I*, Plaintiffs filed the Declaration of Luke Powers dated October 28, 2016, which annexed a copy the Audit dated November 3, 2015 that was completed by the Funds' auditors as Exhibit 4.  *See Showtime I*, ECF Doc. Nos.  20 and 20-4, which are attached as Exhibit B to the Declaration of Frank W. Brennan ("Brennan Declaration").  Thus, based on the foregoing, Plaintiffs clearly possessed actual knowledge of Defendants' purported breach giving rise to alleged amounts due under the Audit and at issue in this lawsuit by the time they met with Defendants on September 16, 2015, but in no case can they claim lack of knowledge after completion of the Audit on November 3, 2015.  As the Plaintiffs' irrefutably had actual knowledge of the alleged failure to remit contributions by November 3, 2015, their breach of fiduciary claim against Newman for the alleged failure to remit contributions was required to be filed within three years, or by no later than 2018.  At the very latest, Plaintiffs had actual knowledge of the alleged amounts due when the March 24, 2016 default arbitration award was issued (as relied upon in *Showtime I*).[3]  The Complaint in this case was not filed until August 19, 2019, clearly beyond the three (3) year statute of limitations applicable to breach of fiduciary duty claims alleged against employers.  As a result, Plaintiffs' ERISA claim against Newman is time-barred and subject to dismissal with prejudice.

---

[2] A copy of the Audit was attached as Exhibit 4 to the Declaration of Luke Powers, sworn to on October 28, 2016, which was submitted in support of Plaintiffs' motion for summary judgment.
[3] A copy of the default arbitration award is annexed as Exhibit C to the Brennan Declaration.

To the extent Plaintiffs contend that a six-year statute of limitations should apply to its breach of fiduciary claim against Newman because of purported fraud or concealment, Plaintiffs' assertion fails as a matter of law.  Where, as here, trustees of multiemployer plans commence an action against an employer and its principal under ERISA seeking to recover unpaid contributions due, no fraud or concealment exists to warrant extending the statute of limitations to six years for a breach of fiduciary duty claim against the principal.  *See Demopoulos,* 117 F.Supp.3d at 509.  As the Court explained in *Demopoulos*:

> This is not a case of fraud because the alleged breach arose from the nonpayment of amounts due to the Funds, and not any misrepresentation or omission made to employees or beneficiaries. This is also not a case of concealment because no one attempted to conceal the failure to pay.  **Either the payments were made or not, and that fact was obvious to the Funds and their Trustees.**

*Demopoulos,* 117 F.Supp.3d at 509 (emphasis added).  Accordingly, the three-year statute of limitations applies to Plaintiffs' breach of fiduciary duty claim against Newman in this case, and for the reasons set forth above, said claim against Newman should be dismissed with prejudice as time-barred.

To the extent Plaintiffs' breach of fiduciary claim against Newman also seeks recovery for unpaid contributions purportedly due from Showtime based on work allegedly performed *after* the Audit Period, such claim should be dismissed because Plaintiffs have failed to meet the minimum pleading standards required under *Iqbal*.  In this regard, Plaintiffs aver in the Complaint that employees of Showtime (who are also members of the Union and participants of the Funds), submitted benefit shortage complaints to the Funds relating to work performed *after* the Audit Period indicating that Showtime owes additional *post-audit-period* contributions exceeding $250,000, <u>without specifying the date(s) when such complaints were received by Plaintiffs</u>.  In light of the March 24, 2016 default arbitration award relied upon by Plaintiffs in *Showtime I* and

based upon Plaintiffs' intentional material omission of the date(s) when they became aware of Defendants' purported failure to pay such post-audit contributions in the Complaint, no reasonable inference can be drawn that (1) Plaintiffs' breach of fiduciary claims seeking recovery of such unpaid *post-audit-period* contributions is timely; and/or (2) Newman is liable for the misconduct alleged as required under *Iqbal*.  As the factual allegations pled by Plaintiffs seeking recovery from Newman or such unpaid *post-audit-period* contributions do not appear timely on their face, fail to restart the statute of limitations clock and fail to "raise a right to relief above the speculative level," Plaintiffs' breach of fiduciary claim against Newman must be dismissed.  *See Twombly*, 550 U.S. at 555, 557.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER EITHER ERISA OR THE LMRA TO SEEK UNPAID CONTRIBUTIONS.

Plaintiffs' first cause of action under Sections 502(g) and Section 515 of ERISA [Complaint, ECF Doc. No. 1 at ¶¶46-53] and second cause of action under Section 301 of the LMRA [Complaint, ECF Doc. No. 1 at ¶¶54-59] seeking alleged unpaid benefit contributions fail to state a cause of action and should be dismissed by this Court.

Plaintiffs' first and second causes of action fail because Plaintiffs do not and cannot present an agreement between Plaintiffs and Showtime, which requires Showtime to remit contributions to the Funds.  It is well established that in order to assert a claim for unpaid contributions under either Section 502(g) or 515 of ERISA and/or Section 301 of the LMRA, the employer must have entered into an enforceable written collective bargaining agreement, which provides for payment of benefit funds. *See* 29 U.S.C. §186(c)(5)(A); *Moglia v. Geoghegan*, 403 F.2d 110, 117 (2d Cir. 1968) (remarking that in an action under Section 302 of the LMRA "[t]he statutory requirement of a written agreement is not a minor technicality which may be dispensed

with when, there being no written agreement, the acts of one party may be said to estop him from defending on that ground. A written agreement is necessary before payments may be made under the section."); *Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield Cty. Sprinkler Co., Inc.*, 243 F.3d 112, 116 (2d Cir. 2001) ("'Section 302(a) of the LMRA makes it unlawful as a general matter for employers to provide payments to union affiliated representatives and entities, including union established ERISA funds' absent a written agreement."); *Cummings v. City of New York*, 302 F. Supp. 3d 511, 521 (S.D.N.Y. 2017) ("to be liable under Section 515, a defendant must (1) have contribution obligations that arise from either a 'plan' or a 'collectively bargained agreement' and (2) be an 'employer' within the meaning of ERISA.").  Here, the facts alleged in the Complaint fail to present any written agreement which obligates Showtime to remit contributions to Plaintiffs, and, as such, Plaintiffs' claims under ERISA and the LMRA fail to state a claim as a matter of law.

     A. *Plaintiffs fail to demonstrate an enforceable agreement obligating Showtime to remit the contributions at issue in this action.*

To support their claims under ERISA and the LMRA, Plaintiffs summarily allege in paragraphs 31 through 35 of the Complaint that Showtime is bound to the 2011-17 Trade Show Association CBA by virtue of Showtime signing the ICA on September 25, 2015. *See* Complaint, ECF Doc. No. 1 at ¶¶31-35.  However, Showtime's signing of the ICA does not, as Plaintiffs erroneously assert, bind Showtime to the 2011-17 Trade Show CBA.  Notably, Plaintiffs do not and cannot allege that Showtime is a signatory to the 2011-17 Trade Show CBA, nor do they or can they allege that Showtime is a member of the Trade Show Association.   As such, Plaintiffs' assertion that the ICA binds Showtime to the 2011-17 Trade Show CBA is patently incorrect and contradicted by the plain meaning of the ICA, and by the prior determinations made by this Court in *Showtime I*.

In order for the 2011-17 Trade Show CBA to be incorporated into the ICA by reference, the 2011-17 Trade Show CBA "must be so referred to and described in the [ICA] that the [Trade Show CBA] may be *identified beyond all reasonable doubt.*" *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (emphasis in the original), (*citing Chiacchia v. National Westminster Bank USA,* 124 A.D.2d 626, 628 (2d Dept. 1986)).  This rule of law "is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient." *Chiacchia*, 124 A.D.2d at 628.  A plain reading of the ICA, which the Plaintiffs drafted, however, fails to identify or otherwise mention the 2011-17 Trade Show CBA, much less identify the 2011-17 Trade Show CBA *beyond a reasonable doubt.*[4]  Further, to the extent Plaintiffs allege that the ICA is merely an extension of the parties "existing agreement," this District Court has already determined that there was no existing agreement between the parties when the ICA was signed.  Accordingly, the ICA does not – as Plaintiffs allege – bind Showtime to the 2011-17 Trade Show CBA.

> ### i.    The Trade Show CBA is Neither Identified nor Referenced by the Opening Paragraph of the ICA.

The opening paragraph of the ICA provides:

> This Interim Compliance Agreement will confirm that we have agreed to extend our current Collective Bargaining Agreement (the "Agreement") with the District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, (the "Union"), *which may expire on June 30, 2011*, on the following terms:

*See* ICA, Exhibit C to the Brennan Declaration, a copy of which was filed in *Showtime I* at ECF Doc. No. 20-2 (Emphasis added).

---

[4] Although Plaintiffs in *Showtime I*, argued on reargument that the beyond a reasonable doubt standard was the incorrect standard, the Court rejected that argument and reaffirmed that for a document to be incorporated by reference into a signed agreement, it must be so identified *beyond a reasonable doubt*. *See Showtime I,* ECF Doc. No. 56 at 5-7, a copy of which is annexed as Exhibit F to the Brennan Declaration.

As the opening paragraph is silent and makes no mention of the 2011-17 Trade Show CBA, the opening paragraph of the ICA does not incorporate the 2011-17 Trade Show CBA by reference.

Further, Plaintiffs are judicially estopped from asserting that this opening paragraph is a reference to the 2011-17 Trade Show CBA. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[a] party may raise a defense of res judicata, collateral estoppel, or judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6) where the basis for that defense is set forth on the face of the complaint or established by public record." *Evercrete v. H-Cap Ltd*, 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006). "Judicial estoppel 'prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). The doctrine of judicial estoppel applies when: "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Id*.[5]

In *Showtime I*, Plaintiffs conceded, and this Court concurred, that when the ICA was signed on September 25, 2015, there was no existing agreement between Showtime and the Union. *See Showtime I,* ECF Doc. No. 44 at 5:14 – 9:4. Indeed, in denying Plaintiffs' motion for summary judgment in *Showtime I*, this Court the Court stated, in relevant, part:

> The Funds argue that by Newman signing the ICA, which provided that the parties agreed to continue their "current CBA," Showtime agreed to be bound by the CBA signed in 2014 between the Carpenters Union and the New York Trade Show Contractors Union, when Showtime performed work on the New York Passenger Ship Terminal, which was similar to that of the association's members….
>
> I conclude that there is no material dispute that Newman signed the ICA on behalf of Showtime, but that there is a dispute as to whether

---

[5] Judicial estoppel may be raised as a defense as long as the party against whom the estoppel is raised had a full and fair opportunity to contest the issue in the prior action. *See, e.g., Ritchie v. Landau*, 475 F.2d 151, 155 (2d Cir. 1973).

the ICA incorporated the Trade Show CBA and thereby bound Showtime to arbitration….

So assuming the relevant contract is the ICA, the Court cannot conclude that the language of that contract is wholly unambiguous and conveys a definite meaning with respect to whether it mandates arbitration of this dispute. The ICA provides that it "will confirm that we have agreed to extend our current Collective Bargaining Agreement with the District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, (the Union), which may expire on June 30, 2011 on the following terms." **But as Showtime asserts, and the Funds do not dispute, the parties had no current CBA in September 2015 when the ICA was signed.**

*See* Brennan Declaration at Exhibit E, *Showtime I,* ECF Doc. No. 44, Tr. 5:14 – 9:4) (emphasis added).

Accordingly, the Court having already determined that there was no existing agreement when Showtime executed the ICA, Plaintiffs are now judicially estopped from taking a contrary position in this action and alleging that the parties had an existing agreement, whether written, oral or by operation of law when the ICA was signed, nor can Plaintiffs assert that the opening paragraph of the ICA is a reference to any such written agreement. Therefore, the opening paragraph of the ICA makes no reference to and does not incorporate the terms of the 2011-17 Trade Show CBA.

  ii.  *Article I of the ICA Does Not Identify or Reference the Trade Show CBA.*

Article I of the ICA also fails to identify, reference or incorporate the terms of the 2011-17 Trade Show CBA.  Article I of the ICA, entitled "Extension of Terms" states:

**Notwithstanding any express termination date contained in the Agreement, the Agreement shall remain in full force and effective until Union negotiates the successor Agreement with the Association** (The "Association(s)") whose members perform work similar to the work performed by the Contractor. The "Associations" include the Building Contractors Association ("BCA"), Association of Wall-Ceiling & Carpentry Industries of

> New York ("Wall-Ceiling"), Contractors Association of Greater New York ( 'CAGNY"), Greater Metro New York Resilient Floor Coverers Association ("Floor Coverers ') Hoisting Trade Association of New York ("Hoisting Trades") the Cement League and Concrete Contractors of Long Island, General Contractors Association, The New York City Millwright Contractors Association, Association of Dockbuilders, Marine Divers and Pile Drivers, New York Trade Show Contractors Association.[6] (emphasis added).

Article I of the ICA identifies a *future* association agreement that will be negotiated at some point *after* the execution of the ICA.  The ICA was executed in September 2015.  *See* Complaint, ECF Doc. No. 1 at ¶¶ 31-34.  The 2011-17 Trade Show CBA is effective July 1, 2011 through June 30, 2017, which was *prior to* the date when the ICA was executed and therefore represents a logical impossibility as a "successor agreement." *See Id.* at ¶19.  Accordingly, a plain reading of Article I of the ICA fails to identify the Trade Show CBA, much less identify the Trade Show CBA *beyond a reasonable doubt.*

Accordingly, because neither the first paragraph of the ICA, nor Article I of the ICA identify the Trade Show CBA, *beyond a reasonable doubt*, the ICA does not and cannot, as a matter of fact and law, incorporate the terms of the 2011-17 Trade Show CBA, by reference. Therefore, because the ICA is silent and makes no mention of remitting contributions to Plaintiffs, Plaintiffs first and second causes of action under ERISA and the LMRA seeking these contributions fail to state a claim as a matter of law.

### B. The Parole Evidence Rule Prohibits Plaintiffs from Relying on a Verbal Agreement that is Outside the Four Corners of the Parties' Written Agreement.

Even if the ICA did reference the 2011-17 Trade Show CBA (which Showtime maintains it does not), Plaintiffs fail to demonstrate that any obligation to remit contributions was retroactive to January 1, 2015.  The entirety of Plaintiffs' claim for unpaid contributions from January 1, 2015

---

[6] *See* Brennan Declaration at Exhibit D, *Showtime I*, ECF No. 20-2.

to present, relies on an alleged oral promise made by Newman to remit contributions pursuant to the 2011-17 Trade Show CBA. *See* Complaint, ECF Doc. No. 1 at ¶32.  However, this alleged oral agreement is unenforceable as a matter of law where the parties have entered into a written agreement – the ICA.  "[T]he parol evidence rule bars the consideration of extrinsic evidence of the meaning of a complete written agreement if the terms of the agreement, considered in isolation, are clear and unambiguous." *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.,* 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000)(internal citations omitted).[7]  Further, "[i]f the terms are ambiguous or contradictory, however, the rule permits the consideration of such evidence not to alter the terms but solely to ascertain the true meaning of the terms." *Id.*  Here, the alleged verbal agreement to have the ICA retroactive to January 1, 2015 (which Showtime vehemently denies), even if accepted by this Court, alters the terms of the ICA, and, as such, cannot serve as a basis for Plaintiffs' claims for unpaid contributions, including any contributions allegedly due prior to the ICA's signing on September 25, 2015. Therefore, the alleged oral agreement set out in paragraph 32 of the Complaint, which alleges that Showtime agreed to be bound by the 2011-17 Trade Show CBA retroactive to January 1, 2015, if accepted, would alter the meaning of the ICA.  Accordingly, this alleged oral agreement cannot be considered by this Court.  Without the alleged oral promises set forth in paragraph 32, Plaintiffs fail to demonstrate how they can seek any unpaid contributions that may have accrued prior to September 25, 2015, which was the date when the ICA was admittedly signed by Newman. *See* ECF Doc. No. 1 at ¶34.  Accordingly, Plaintiffs first and second causes of action under ERISA and the LMRA seeking unpaid contributions from January

---

[7] "The Court notes that the parol evidence rule, despite its name, is a rule of substantive law, and courts sometimes rely on it to grant Rule 12(b)(6) motions to dismiss contract claims." *Holloway v. King,* 361 F. Supp. 2d 351, 358 (S.D.N.Y.), *aff'd.* 161 F. App'x 122 (2d Cir. 2005)

1, 2015 through July 16, 2015, fails to state a claim as a matter of law.  Therefore, Plaintiffs' first and second causes of action must be dismissed by this Court.

### POINT III

### ALL CLAIMS ASSERTED BY PLAINTIFF CHARITY FUND AND PLAINTIFF LABOR-MANAGEMENT CORPORATION SHOULD BE DISMISSED FOR LACK OF STANDING

"Standing is the threshold question in every federal case, determining power to entertain the suit." *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (quotation omitted).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v Seldin,* 422 U.S. 490, 498 (1975). "Because the standing issue goes to th[e] Court's subject matter jurisdiction, it can be raised *sua sponte." Central States Southeast and Southwest Areas Health and Welfare Fund v. MerckMedco Managed Care, LLC,* 433 F.3d 181, 198 (2d Cir.2005).  Here, Plaintiffs commenced this action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(3) and Section 301 of LMRA, 29 U.S.C. § 185.  Plaintiffs Charity Fund and Labor-Management Corp., however, lack standing to assert claims under the LMRA and/or ERISA against Defendants.  Accordingly, the Court should dismiss Plaintiff Charity Fund's and Plaintiff Labor-Management Corp.'s first, second, and third causes of action under Fed. R. Civ. 12(b)(1) and/or 12(b)(6) against all Defendants.

A. *Plaintiffs Charity Fund and Labor-Management Corporation Lack Standing to Assert a Section 301 Claim Under LMRA.*

Section 301 of the LMRA authorizes a labor organization to "sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States" for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a)-(b).  Although courts have recognized suits pursuant to Section 301 of

the LMRA by trustees of certain employee benefit funds against contributing employers (*See, e.g.*,

*Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364 (1984); *Lewis v. Benedict Coal*

*Corporation,* 361 U.S. 459 (1960); *O'Hare v. General Marine Transport Corp.,* 740 F.2d 160 (2d

Cir.1984)), not all trustees of benefit funds possess standing to assert a claim under Section 301 of

the LMRA.   Indeed, in *Trustees. of the Health and Welfare and the Pension Funds of the Four*

*Joint Boards v. Schlesinger Bros., Inc.*, 931 F. Supp. 204, 208 (S.D.N.Y. 1996), this district court

dismissed the Section 301 claims asserted by trustees of health, welfare and pension funds, because

"[u]nder § 301 of the LMRA, non-parties and non-signatories to a collective bargaining agreement

cannot enforce the terms of the agreement."   Moreover, in *Ferrera v. Quadrozzi Equipment*

*Leasing Corp.*, 2013 WL 3226755 (E.D.N.Y. June 25, 2013), the Eastern District of New York

dismissed a Section 301 action under the LMRA "brought by the trustees of an industry

advancement fund whose stated purpose is to benefit the 'general welfare' of the ready-mix

concrete industry."   As the court explained in *Ferrera*,

> This type of fund is clearly distinguishable from employee benefit
> funds, which are established with the explicit purpose of providing
> some form of security to employees and their families. In fact, in a
> prior case brought by the Fund against another employer in this
> circuit, the court found that "the Fund was not established to benefit
> employees." *Quadrozzi v. Valente Sand and Stone Corp.*, No. 89-
> cv-8102, 1991 U.S. Dist. LEXIS 17087, 1991 WL 255121, at *1
> (S.D.N.Y. Nov. 19, 1991). While it may be argued that industry
> advancement funds promote industrial stability, such funds are not
> at the core of collective bargaining agreements between employers
> and unions, nor do they directly affect the core parties to such
> agreements.  As such, I conclude that plaintiffs do not fall within the
> zone of interests protected by § 301 of the LMRA.

*Ferrara*, 2013 WL 3226755, at *6.

Here, the Complaint is devoid of any factual allegations from which the Court can discern

whether the Charity Fund and the Labor-Management Corp. "fall within the zone of interests

protected by § 301 of the LMRA" as contemplated in *Ferrara* and possess standing to assert their

Section 301 claims under the LMRA.  Rather, in the Complaint, Plaintiffs resort to conclusory and self-serving averments that are irrelevant to establishing the standing of Plaintiff Charity Fund and Plaintiff Labor-Management Corp. to pursue Section 301 claims under the LMRA.  In describing these parties, Plaintiffs allege that Plaintiff Charity Fund are trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3) and Plaintiff Labor-Management Corp. is a New York not-for-profit corporation organized and operated in accordance with Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9).  *See* Complaint, ECF Doc. No. 1 at ¶¶5-6.  Based on the court's rationale in *Ferrara,* trustees of a charitable organization like Plaintiff Charity Fund and a not-for-profit organization such as Plaintiff Labor-Management Corp. simply do not possess statutory standing to assert claims under Section 301 of the LMRA.  Accordingly, the Section 301 claims under the LMRA asserted by Plaintiff Charity Fund and Plaintiff Labor-Management Corp. must be dismissed as a matter of law.

  B. *Plaintiffs Charity Fund and Labor-Management Corporation Also Lack Standing to Assert Claims Under ERISA.*

   Under Section 502(a)(3) ERISA, only a "participant, beneficiary, or fiduciary" is authorized to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). (emphasis added).  Section 3(7) of ERISA defines a "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1132(a)(7).  While Section

3(8) of ERISA provides that a "beneficiary" is a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder. 29 U.S.C. § 1132(a)(7).  A person is a "fiduciary" with respect to a plan under ERISA to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such **plan** or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such **plan**.

29 U.S.C. § 1002(21)(A).

Further, under ERISA, an "employee benefit plan" or "plan" is an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan. 29 U.S.C. § 1002(3).  ERISA defines an "employee welfare benefit plan" and "welfare plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)." 29 U.S.C. § 1002(1).

Additionally, Section 3(2) of ERISA provides in relevant part:

> **(A)** Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by

both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--

> **(i)** provides retirement income to employees, or
> **(ii)** results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan….

> **(B)** The Secretary may by regulation prescribe rules consistent with the standards and purposes of this chapter providing one or more exempt categories under which—

> > **(i)** severance pay arrangements, and
> > **(ii)** supplemental retirement income payments, under which the pension benefits of retirees or their beneficiaries are supplemented to take into account some portion or all of the increases in the cost of living (as determined by the Secretary of Labor) since retirement,
> > shall, for purposes of this subchapter, be treated as welfare plans rather than pension plans. In the case of any arrangement or payment a principal effect of which is the evasion of the standards or purposes of this chapter applicable to pension plans, such arrangement or payment shall be treated as a pension plan. An applicable voluntary early retirement incentive plan (as defined in section 457(e)(11)(D)(ii) of Title 26) making payments or supplements described in section 457(e)(11)(D)(i) of Title 26, and an applicable employment retention plan (as defined in section 457(f)(4)(C) of Title 26) making payments of benefits described in section 457(f)(4)(A) of Title 26, shall, for purposes of this subchapter, be treated as a welfare plan (and not a pension plan) with respect to such payments and supplements.

29 U.S.C.A. § 1002(2)(A)-(B).

Where a plaintiff is not one of the enumerated plaintiffs expressly granted standing to sue under ERISA – i.e., participant, beneficiary, or fiduciary – the ERISA claims of such non-enumerated plaintiff must be dismissed. *See Metal Lathers Local 46 Pension Fund v. River Ave. Contr. Corp.*, 954 F. Supp. 2d 250, 255 (S.D.N.Y. 2013); *see also Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 891-93 (2d Cir. 1983) (dismissing

Fund's ERISA complaint for lack of subject matter jurisdiction because pension fund was not authorized to assert cause of action); *E. States Health & Welfare Fund v. Philip Morris, Inc.,* 11 F. Supp. 2d 384, 401 (S.D.N.Y. 1998) ("The Second Circuit has taken a very strict view of who has standing to bring suits under §502, refusing to extend standing beyond the plaintiffs specifically named in ERISA.").

In this case, Plaintiffs do not allege any facts in the Complaint establishing that Plaintiff Charity Fund and Plaintiff Labor-Management Corp. qualify as a "participant, beneficiary, or fiduciary" with standing to bring suit under Section 502(a)(3) of ERISA.  Rather, as discussed above, Plaintiffs provide hollow and inconsequential descriptions of Plaintiff Charity Fund and Plaintiff Labor-Management Corp.  *See* Complaint, ECF Doc. No. 1 at ¶¶5-6.  Indeed, it appears that Plaintiff Charity Fund and Plaintiff Labor-Management Corp. are not even fiduciaries of an "employee benefit plan" or "plan" subject to ERISA. 29 U.S.C. § 1002(1)-(3).  Absent any factual basis in the Complaint setting forth Plaintiff Charity Fund's and Plaintiff's Labor-Management Corp.'s standing to pursue claims under ERISA, their ERISA claims must be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit that: (a) all claims against Newman for breach of his alleged fiduciary duty be dismissed with prejudice as untimely; (b) Plaintiffs' claims seeking unpaid contributions under ERISA and the LMRA be dismissed for failing to state a cause of action; and (c) Plaintiff Charity Fund and Plaintiff Labor-Management Corp. be found to lack standing to file a claim under either ERISA or LMRA.

Dated: Uniondale, New York
      November 4, 2019

Respectfully Submitted,

FORCHELLI DEEGAN TERRANA LLP

By:  /s/ *Frank W. Brennan*
Frank W. Brennan
Alexander Leong
Lisa M. Casa
*Attorneys for Defendants*
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
 (516) 248-1700

24