USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/26/2020_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
TRUSTEES OF THE NEW YORK CITY          :
DISTRICT COUNCIL OF CARPENTERS         :
PENSION FUND, WELFARE FUND, ANNUITY    :
FUND, AND APPRENTICESHIP,              :
JOURNEYMAN RETRAINING,                 :         19-CV-7755 (VEC)
EDUCATIONAL AND INDUSTRY FUND, and     :
TRUSTEES OF THE NEW YORK CITY          :         OPINION AND ORDER
CARPENTERS RELIEF AND CHARITY FUND,    :
and THE NEW YORK CITY AND VICINITY     :
CARPENTERS LABOR-MANAGEMENT            :
CORPORATION,                           :
                                       :
                         Plaintiffs,   :
                                       :
            -against-                  :
                                       :
                                       :
SHOWTIME ON THE PIERS, LLC and         :
CHARLES NEWMAN, individually,          :
                                       :
                         Defendants.   :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs (the "Funds") bring this action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, seeking delinquent benefit contributions from Defendants. Compl. (Dkt. 1) ¶ 1. On November 4, 2019, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Mot. (Dkt. 25). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Defendant Showtime on the Piers, LLC ("Showtime") is a trade show services company that constructs booths for events on several Manhattan piers. Compl. ¶ 9. Defendant Charles Newman owns and operates Showtime. *Id.* ¶¶ 8, 10–11. Newman previously owned a similar, if not identical, company—Port Parties Ltd. ("Port Parties")—with his father. *Id.* ¶ 12. After Port Parties ceased operating, Newman established Showtime, which now performs the same trade show and exhibit work at the same locations as Port Parties once did. *Id.* ¶¶ 13–14. Showtime also has the same equipment, customers, office, and address. *Id.* ¶¶ 23–24.

In March 2010, on behalf of Port Parties, Newman signed a collective-bargaining agreement ("CBA") with the New York District Council of Carpenters (the "Union"). *Id.* ¶ 15. The CBA that Newman signed had the same terms as a CBA between the Union and the New York Trade Show Contractors Association (the "Trade Show Association") that had been in effect from July 1, 2001, through June 30, 2006. *Id.* ¶ 16. In May 2010, Newman signed an Interim Compliance Agreement ("ICA") to extend the Port Parties CBA until the Trade Show Association and the Union reached a successor agreement, to which Port Parties would also be bound. *Id.* ¶ 18. The successor agreement, finalized in February 2014, covered the period from July 1, 2011, through June 30, 2017 (the "2011–17 CBA"). *Id.* ¶ 19. Whether Showtime—Newman's current company—is bound by the 2011–17 CBA is the primary issue in this litigation.

Around December 2014, Port Parties ceased operating, and Newman began operating his trade show business through Showtime. *Id.* ¶ 22. Newman continues to hire members of the

---

[1] The facts are based on the allegations contained in the Complaint. The Court accepts all well-pled, non-conclusory factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to Plaintiff. *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

Union to perform trade show construction work that is covered by the 2011–17 CBA. *Id.* ¶ 26. The Union members who are hired by Showtime participate in the Funds. *Id.* ¶ 27.

Starting in January 2015, neither Port Parties nor Showtime remitted benefit contributions to the Funds. *Id.* ¶¶ 28–29. On September 16, 2015, the Funds and the Union met with Showtime, represented by Newman, to discuss its alleged delinquent contributions. *Id.* ¶ 31. At that meeting, Newman orally agreed to remit contributions in accordance with the 2011–17 CBA retroactive to January 1, 2015. *Id.* ¶ 32. Newman also agreed to permit the Funds to audit his records to determine the amount that Showtime owed. *Id.* ¶ 33. On September 25, 2015, Newman signed an ICA (the "2015 Showtime ICA") to memorialize the agreement reached at the September 16, 2015, meeting. *Id.* ¶¶ 34–35.

In October 2015, Showtime began remitting benefit contributions in accordance with the 2011–17 CBA. *Id.* ¶ 38. Showtime also submitted to the agreed-upon audit covering January 1, 2015, through July 26, 2015; the audit revealed delinquent benefit contributions of $597,500.88. *Id.* ¶¶ 39–40. Showtime has not paid the delinquency. *Id.* ¶ 41. The Funds have also received additional benefit shortage complaints for work done after the audit period. *Id.* ¶ 42. Showtime has not allowed an audit for any period subsequent to July 27, 2015. *Id.* ¶ 43.[2]

On March 24, 2016, Plaintiffs and Showtime participated in an arbitration; Plaintiffs then sought to confirm the arbitration award in a lawsuit filed in this district on June 22, 2016. *See Trustees of N.Y.C. Council of Carpenters Pension Fund v. Showtime on the Piers*, No. 16-CV-4788 ("*Showtime I*").[3] In that litigation, which was assigned to Judge Abrams, Showtime maintained that it had never agreed to be bound by the 2011–17 CBA, and thus that the arbitrator

---

[2]   Showtime disputes that it is a party to a CBA.

[3]   The Court takes judicial notice of *Showtime I*, not for the truth of the matters asserted in *Showtime I*, but to establish the fact of such litigation and related filings. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

3

had no authority to determine that it owed delinquent contributions to the Funds.  Mem. of Law Cross-Mot. Summ. J. at 3, Dkt. 30, *Showtime I* (Dec. 2, 2016).  On October 3, 2017, Judge Abrams denied both parties' motions for summary judgment, finding that the 2015 Showtime ICA was ambiguous whether it incorporated the 2011–17 CBA.  *See* Summ. J. Tr. at 9:5-11, Dkt. 44, *Showtime I* (Oct. 3, 2017).  Before trial, on August 7, 2019, Judge Abrams so-ordered the parties' stipulation to vacate the arbitration award and to dismiss *Showtime I* without prejudice.  *See* Stip., Dkt. 119, *Showtime I* (Aug. 7, 2019).

The Funds filed this lawsuit twelve days later, alleging three causes of action.  The first and second causes of action, brought pursuant to Sections 502(g)(2) and 515 of ERISA and Section 301 of the LMRA, are against Showtime for violating the 2011–17 CBA.  Compl. ¶¶ 53, 59.  The third cause of action, brought pursuant to Section 409(a) of ERISA, is against Newman for breach of fiduciary duty for directing Showtime to withhold required benefit contributions.  *Id.* ¶¶ 64–67.

## DISCUSSION

Defendants advance three arguments in support of their motion to dismiss.  Defendants first assert that Plaintiffs' first and second causes of action must be dismissed because they have not alleged—and are estopped from alleging—that the parties agreed to the 2011–17 CBA.  Defendants next assert that Plaintiffs' third cause of action against Newman is barred by ERISA's statute of limitations.  Finally, Defendants assert that two of the three Plaintiffs lack standing to bring either LMRA or ERISA claims.

### I. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "[A]

4

complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  The Court is not required, however, to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court is generally confined to "the four corners of the complaint" and must "look only to the allegations contained therein," *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-6091, 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), it may consider materials attached to the complaint or incorporated by reference, as well as matters appropriate for judicial notice.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

**II.     Plaintiffs Have Adequately Pled an Agreement Between the Parties**

Because the Funds have alleged that Showtime is bound by the 2011–17 CBA through its oral representations and conduct, the Funds have adequately pled an agreement between the parties.  The Complaint alleges that Showtime orally agreed to be bound and submitted to an audit under the CBA, remitted contributions to the Funds in accordance with the CBA, and continued to use Union labor provided under the CBA.  Defendants argue that the Funds cannot identify any written agreement which binds Showtime to the CBA, as the 2015 Showtime ICA is purportedly silent on this point.

Whether the 2015 Showtime ICA incorporates the 2011–17 CBA is not dispositive.  Neither ERISA nor the LMRA require an employer to sign a CBA to be bound by its terms; the employer need only, for example, manifest an intent to adopt the CBA by either conducting itself

in accordance with the CBA's terms or availing itself of the CBA's benefits.[4] The Second Circuit made that plain in *Brown v. C. Volante Corp.*, 194 F.3d 351, 353, 355–56 (2d Cir. 1999). Defendants distinguish *Brown* on the ground that the *Brown* defendants had at one point been signatories to a CBA, whereas Showtime has never been a signatory. That fact, however, was not material to the decision reached in *Brown*, nor have courts in this district read *Brown* so narrowly. *See, e.g.*, *N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, No. 07-CV-8008, 2008 WL 2115225, at *3 (S.D.N.Y. May 16, 2008) ("[B]ased on the record before the Court at this time, it is clear that defendants availed themselves of the benefits of the 2001 CBA—namely, by hiring Union members—and, at least in part, complied with its terms, thereby implicitly adopting the agreement through their conduct." (quotation omitted)). Indeed, Showtime's rule would produce unprincipled outcomes anathema to ERISA's stated purpose to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (quotation omitted). Under Defendants' view of the law, an employer that signed a CBA that expired would be bound by subsequent CBAs with which it complied but did not sign, but an employer identical in all respects that had not previously signed a CBA would not be bound. Beyond producing unprincipled outcomes, Showtime's rule finds no support in statutory text or in principles of contract law. *See Brown*, 194 F.3d at 355 (citing 29 U.S.C. § 186(c)(5)(B)).

In any event, the Funds have pled continuity between Newman's first company, Port Parties, and its successor company, Showtime; thus, this is not a clean-cut case where a company agrees to an unsigned CBA through its conduct for the first time. The Funds have alleged that

---

[4] For this reason too, the parole evidence rule, on which Defendants rely, is irrelevant. The Funds are not asserting that Showtime is a party to the 2011–17 CBA through the 2015 Showtime ICA.

Showtime performs the same trade show work as Newman's previous company, Port Parties, which undisputedly was bound by the 2011–17 CBA, and Showtime has the same union employees, officers, location, equipment, and customers as Port Parties.  *See, e.g.*, *Serv. Emps. Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC*, No. 04-CV-9580, 2006 WL 692000, at *4 (S.D.N.Y. Mar. 16, 2006) (holding that a successor employer was bound by an earlier-executed CBA because it implicitly adopted the CBA by complying with its terms).

Defendants also argue that the Funds are judicially estopped from asserting that the parties reached an agreement either orally at the September 16, 2015, meeting, or as a result of Showtime's conduct, because the Funds allegedly conceded in *Showtime I*, that "the parties had no current CBA in September 2015 when the ICA was signed."  Defs.' Mem. of Law (Dkt. 27) at 15 (quoting Summ. J. Tr. 9:2-4).  Defendants assert that the Funds' current position contradicts its position in *Showtime I* that Showtime only became a signatory with the Union when it signed the ICA on September 25, 2015.  *Id.* at 15; Reply (Dkt. 29) at 8.

The equitable doctrine of judicial estoppel "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding."  *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).  It is a form of sanction for litigants who have not been truthful in previous lawsuits.  *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 265 (2d Cir. 2018); *see also Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) ("The purposes of the doctrine are to preserve the sanctity of the oath and to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." (quotation omitted)).

A party invoking judicial estoppel must show that "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment."

*Mitchell*, 190 F.3d at 6 (citations omitted). "Before judicially estopping a litigant, a court must inquire into whether the particular factual circumstances of a case tip the balance of equities in favor of doing so," considering whether the prior inconsistent position gave the party an unfair advantage or undermines the integrity of the judicial process. *Clark*, 886 F.3d at 266–68.

Defendants' argument is too cute by half, as *Showtime I* is easy to reconcile with the Funds' current position. The District Court summarized the Funds' position as follows:

> The Funds assert that [the Union] met with Mr. Newman as the principal of Showtime on September 16, 2015, to discuss Showtime's status with the Union. They further allege that during this meeting Newman agreed that Showtime would become a signatory with the Carpenters Union to a [CBA] . . . retroactive to January 1, 2015, the date Showtime took over Port Parties' union work. Port Parties is another company that is owned and run by Newman, and it had a CBA with the union, which included an arbitration agreement since 2010. The Funds contend that they gave Newman two forms to effectuate that agreement at this September 2015 meeting, an Interim Compliance Agreement, or ICA, and an Administrative Form. The Funds further allege that Newman filled out, signed, and dated the Administrative Form that same day, and that Newman emailed an executed copy of the ICA to a Carpenters Union representative on September 25th.

Summ. J. Tr. 4:19–5:11. Here, the Funds have likewise alleged that Showtime orally agreed to be bound by the 2011–17 CBA and then memorialized that agreement in the 2015 Showtime ICA. Although Plaintiffs appear to have added the theory that Showtime's *conduct* also establishes its agreement to the 2011–17 CBA, that theory does not contradict its previous position. Nor does its addition justify estopping Plaintiffs in light of the equitable principles animating the doctrine, especially considering that Defendants have asserted no prejudice.

**III.    The Statute of Limitations Bars Plaintiffs' Breach-of-Fiduciary-Duty Claims**

Defendants contend that the Funds' claims against Newman are barred by ERISA's statute of limitations. The Funds allege, in general, that Newman breached his fiduciary duty by misappropriating assets owed to the Funds to pay Showtime's creditors. *See* Pls.' Opp'n (Dkt. 28) at 13. On a motion to dismiss, it is only appropriate to dismiss a claim on statute-of-

limitations grounds if the complaint "clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). The parties agree that ERISA's three-year statute of limitations applies to this case. *See* Pls.' Opp'n at 14. That provision states:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Because the Funds learned of Newman's alleged breach in 2015, sub-section (2) provides the earlier date. The Funds also have not alleged fraud and concealment, which would have extended the limitations period to six years. The Court holds that the three-year limitations period applies.

Although that would seem to end the issue—as the parties' meeting, audit, and arbitration took place more than three years before the Complaint was filed—the Funds vaguely argue that they have alleged several "independent and discrete" breaches; each breach starting (or restarting) a new clock. Pls.' Opp'n at 14. From what the Court can decipher, Newman allegedly caused Showtime not to remit the sum determined to be due by the post-September meeting audit and has, in keeping with that initial decision, continued to refuse to pay the delinquency identified by the audit. *See* Compl. ¶¶ 39–41. Insofar as the Funds' claim is premised on that decision, their claim against Newman is time-barred.

At the latest, the Funds learned of Newman's decision to withhold funds determined to be due by the audit when they arbitrated against him in March 2016. Restarting the limitations

clock on a later date just because Newman continued to withhold those funds would conflict with the statute's plain text.  The Funds' claim is barred "three years *after the earliest date*" from which they had "actual knowledge" of the breach.  29 U.S.C. § 1113(2) (emphasis added).  A plaintiff has "'actual knowledge of the breach or violation' . . . when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act."  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).  Thus, once a beneficiary becomes aware of a fiduciary's decision to withhold employee benefit contributions, the clock starts, and it does not reset each time the fiduciary refuses again to remit those same contributions.  To hold otherwise would improperly apply the continuing-violations theory—where "fiduciaries repeat violations of the same character over and over"—to Section 1113(2).  *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 558 F. Supp. 2d 378, 401 (E.D.N.Y. 2008), *aff'd*, 710 F.3d 57 (2d Cir. 2013); *see Muehlgay v. Citigroup Inc.*, 649 F. App'x 110, 112 (2d Cir. 2016) ("[A]pplying the continuing-violation theory to § 1113(2) would improperly supplant the plain language of the statute."); *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520–21 (9th Cir. 1991) ("[I]f the breaches are of the same kind and nature and the plaintiff had actual knowledge of one of them more than three years before commencing suit, § 1113(a)(2) bars the action.").[5]

Although that piece of the Funds' claim is time-barred, the Complaint also alleges that "[i]n addition to the amounts owed for work during the Audit Period, employees of Showtime, (who are also members of the Union and participants of the Funds), submitted benefit shortage

---

[5] The Court is aware that other courts have either applied or entertained the continuing-violations doctrine to ERISA's statute of limitations; a different textual provision—the six-year period, 29 U.S.C. § 1113(1), not the three-year period, *id.* § 1113(2)—was at issue in those cases, however.  *See, e.g.*, *Novella v. Westchester Cty.*, 661 F.3d 128, 146 (2d Cir. 2011); *Rapp v. Henkel of Am.*, No. 18-CV-01656, 2019 WL 4509095, at *5 (D. Conn. Sept. 18, 2019); *Reed v. Queens Vill. Comm. for Mental Health for J-CAP, Inc.*, No. 18-CV-3114, 2019 WL 4452386, at *9 (E.D.N.Y. Sept. 17, 2019); *L.I. Head Start*, 558 F. Supp. 2d at 401.

complaints to the Funds relating to work performed after the Audit Period indicating that Showtime owes additional post-audit contributions exceeding $250,000." Compl. ¶ 42. From this allegation, the Court can loosely infer that Newman made separate decisions not to remit benefit contributions due for work performed *after* the audit period. A claim based on those facts would not be barred as to benefit contributions accrued from August 19, 2016, to the present. Those decisions do more than maintain the status quo—they each cause distinct harm by depriving the Funds of additional contributions. *See L.I. Head Start*, 558 F. Supp. 2d at 400–01 (collecting cases); *cf. US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019) (in the antitrust context, "[a]n overt act that restarts the statute of limitations is characterized by two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff" (quotation omitted)). The Court will therefore dismiss the Funds' claim against Newman but will grant Plaintiffs leave to replead a breach of fiduciary duty based on decisions he made that are not time-barred.

### IV. Plaintiffs Charity Fund and Labor Management Corp. Have Prudential Standing to Assert LMRA Claims, But Not ERISA Claims

Plaintiffs Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund") are the trustees of a 501(c)(3) charitable organization. Compl. ¶ 5. Plaintiff New York City and Vicinity Carpenters Labor-Management Corporation (the "Labor Management Corp.") is a New York not-for-profit corporation organized under Section 302(c)(9) of the LMRA. *Id.* ¶ 6. The parties agree that the Charity Fund and the Labor Management Corp. lack standing to bring ERISA claims; they dispute only whether they have prudential standing to bring LMRA claims. *See* Pls.' Opp'n at 17. Defendants argue that the Charity Fund and the Labor Management Corp. are not within the "zone of interests" protected by the LMRA. Defs.'

Mem. of Law at 19–20; *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) ("Whether a plaintiff comes within the 'zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." (quotation omitted)).

Section 301 of the LMRA creates a cause of action for "violations of contracts between an employer and a labor organization." 29 U.S.C. 185(a); *see Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund and Annuity Fund v. Lollo*, 35 F.3d 29, 34 (2d Cir. 1994) ("Section 301 authorizes suits for the violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce."). Section 501 defines "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 142(3) (incorporating 29 U.S.C. § 152(5)).

The Complaint alleges that the Charity Fund and the Labor Management Corp. are "labor organizations" within the meaning of the LMRA and third-party beneficiaries of the 2011–17 CBA. *See* Compl. ¶¶ 4–6, 20, 36; *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). They were created for the benefit of Union employees and are third-party beneficiaries of the 2011–17 CBA to whom Showtime is allegedly obligated to remit contributions. In that respect, they are virtually indistinguishable from their co-plaintiffs the Trustees of New York City District Council of Carpenters Pension, Annuity, and Apprenticeship,

Journeyman Retraining, Educational and Industry Funds.  They may all bring suit pursuant to Section 301 of the LMRA.  *Cement & Concrete Workers*, 35 F.3d at 34.[6]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Complaint's third cause of action against Charles Newman is dismissed with leave to amend.  *See* Fed. R. Civ. P. 15(a)(2).  The Complaint's first cause of action for ERISA claims is dismissed with prejudice insofar as it is asserted by the Charity Fund and the Labor Management Corp.

The Clerk of Court is respectfully directed to close the open motion at docket entry 25.

**SO ORDERED.**

**Date:  May 26, 2020**  
**New York, New York**

_____  
**VALERIE CAPRONI**  
**United States District Judge**

---

[6] Defendants' reliance on *Ferrara v. Quadrozzi Equip. Leasing Corp.*, No. 11-CV-5183, 2013 WL 3226755 (E.D.N.Y. June 25, 2013), is misplaced.  The trustees of an "industry advancement fund" lacked prudential standing because that fund's purpose was to benefit the general welfare of the industry—not union employees—and thus the trustees of the fund fell outside the "zone of interests" protected by Section 301 of the LMRA.  *Id.* at *6.